Filed 11/20/19

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE CARLOS LOPEZ,<br><br>    Defendant and Appellant. | F075765<br><br>(Super. Ct. No. BF162814A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Steven M. Katz, Judge.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Eric L. Christoffersen and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

In 2017, a jury convicted Jose Carlos Lopez of possession of a controlled substance (heroin) for sale (Health & Saf. Code, § 11351).  The trial court sentenced Lopez to the upper term of eight years, enhanced by four years based on four prior prison

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I, II, and IV of the Discussion.

terms (Pen. Code, § 667.5, subd. (b)).[1] Lopez's sentence was further enhanced by three years by Health and Safety Code section 11370.2. In a companion case, the court imposed a one-third consecutive term of 32 months for Lopez's 2015 conviction for transporting narcotics (heroin) for sale (Health & Saf. Code, § 11352, subd. (a)). Lopez received an aggregate prison term of 17 years eight months.

Lopez contends the trial court abused its discretion in permitting the jury to hear about his 2015 conviction for transporting heroin for sale. He also claims the court abused its discretion when it rejected a chain of custody argument and permitted the jury to hear about the heroin seized in this matter and tested by a crime laboratory. We reject these claims. However, we agree with the parties that Lopez's three-year enhancement pursuant to Health and Safety Code section 11370.2 must be stricken because it is inapplicable in this case. We also agree with the parties that Senate Bill No. 136 (2019-2020 Reg. Sess.; Senate Bill 136), which the Governor recently signed, retroactively applies to Lopez. Senate Bill 136 amends the circumstances under which a one-year sentence enhancement may be imposed under section 667.5, subdivision (b). Under the new law, none of Lopez's four prior prison terms qualify for this enhancement. We strike the enhancements under section 667.5, subdivision (b), and Health and Safety Code section 11370.2, but otherwise affirm the judgment.

## BACKGROUND

We summarize the material trial facts. We provide additional facts later in this opinion when relevant to specific issues raised on appeal.

On January 6, 2016, a senior deputy with the Kern County Sheriff's Department, Michael Dorkin, arrested Lopez, who was wanted on an outstanding warrant. When he searched Lopez, Dorkin found a bag containing 24 bindles of suspected heroin. The total heroin, including the bag and bindles, weighed 35.9 grams. Dorkin also found three $20

---

[1] Undesignated statutory references are to the Penal Code.

bills, three $10 bills, and 11 $1 bills on Lopez (a total of $101). At the time of his arrest, Lopez appeared to be under the influence of heroin. Later testing confirmed that at least five of the bindles recovered from Lopez contained heroin. The other 19 bindles were not tested because their collective weight was insufficient to reach the next criminal enhancement.

## DISCUSSION

As an initial matter, Lopez has filed a request for judicial notice pursuant to rule 8.252 of the California Rules of Court, and Evidence Code sections 452 and 459. We were asked to take judicial notice of the following: (1) a 1999 superior court order and related documents in San Diego County Superior Court case No. SF133532; (2) a 2014 superior court order and related documents from the same matter in number 1; and (3) a 2017 superior court order in San Diego County Superior Court case No. SCD107189. Respondent does not oppose this request.

We grant Lopez's request for judicial notice.

**I.**[*] **The Trial Court Did Not Abuse Its Discretion Regarding The Admission Of Lopez's 2015 Conviction For Transporting Heroin For Sale.**

Lopez contends that the trial court abused its discretion by permitting the jury to hear the facts underlying his 2015 conviction for transporting heroin for sale. He argues that this prior incident was too dissimilar to be relevant and was more prejudicial than probative. He seeks reversal of his conviction in this matter.

### A. Background.

During this trial, the parties stipulated that in September 2015 Lopez was convicted of transporting heroin for sale in violation of Health and Safety Code section 11352, subdivision (a). The jury learned that, following the 2015 conviction, Lopez had been erroneously released from custody. He was rearrested on January 6,

---

[*] See footnote, *ante*, page 1.

3.

2016, pursuant to a warrant.[2]  It was during this arrest that the heroin supporting the present conviction was discovered on Lopez.

The jury in this matter learned that, in June 2015, officers stopped Lopez while he was driving a vehicle.  Officers eventually located a brick of heroin, wrapped in multiple layers of plastic, hidden in a cell phone case that had been pushed down between the rear seat and the back of the trunk.  The heroin weighed 249 grams.

During this trial, the prosecution's drug expert opined Lopez's possession of 249 grams of heroin from the 2015 conviction, "close to 2,000 personal uses," represented an enormous amount for mere personal use.  The expert believed the 2015 heroin was intended for sales.  The expert also opined the 35.9 grams of heroin seized in the present matter, "about 350 personal uses," also was possessed for sales.  This heroin had been placed in 24 bindles, and Lopez possessed small denominations of cash.

## B.  The standard of review.

"'We review the trial court's decision whether to admit evidence, including evidence of the commission of other crimes, for abuse of discretion.' " (*People v. Leon* (2015) 61 Cal.4th 569, 597 (*Leon*).)  "A trial court abuses its discretion when its ruling 'fall[s] "outside the bounds of reason.' " (*People v. Waidla* (2000) 22 Cal.4th 690, 714 (*Waidla*).)

## C.  Analysis.

Lopez argues his 2015 conviction for transporting heroin for sale did not share any similarities with this matter.  He contends the 2015 incident involved substantially more heroin (249 grams versus 35.9 grams), and the heroin in the prior incident was discovered inside his vehicle and not on his person.  He claims that, even if the 2015 conviction was

---

[2] The sheriff's department erroneously released Lopez instead of transporting him to the California Department of Corrections to begin serving his sentence for the 2015 conviction.  In that prior matter, Lopez was sentenced on December 14, 2015.  On January 5, 2016, a bench warrant was issued for his arrest.

relevant, its admission was more prejudicial than probative under Evidence Code section 352.  We find these contentions unpersuasive.

Character evidence is generally inadmissible to prove a person's conduct on a specified occasion.  (Evid. Code, § 1101, subd. (a).)  However, evidence a person committed a crime or other act may be admitted to prove some other material fact, such as that person's knowledge, intent or motive.  (*Id.*, § 1101, subd. (b).)  The prior act must be "relevant to prove a fact at issue (Evid. Code, § 210), and its admission must not be unduly prejudicial, confusing, or time consuming (Evid. Code, § 352)."  (*People v. Leon, supra,* 61 Cal.4th at pp. 597-598.)  Relevance depends, in part, on whether the other act is sufficiently similar to the current charges to support a rational inference of intent, common design or other material fact.  (*Id.* at p. 598.)

Lopez relies on *People v. Jefferson* (2015) 238 Cal.App.4th 494 (*Jefferson*), but it does not assist him.  In *Jefferson*, the appellate court found an abuse of discretion when the trial court failed to exclude evidence the defendant had possessed registered firearms on two occasions.  (*Id.* at pp. 506-507.)  The evidence about the registered firearms was not logically connected with the pending allegation that the defendant knew a charged firearm had been stolen.  In addition, other trial evidence had suggested the defendant knew the charged firearm was stolen.  As such, evidence about the defendant's registered firearms added nothing of value, but it portrayed him as a dangerous person.  (*Id.* at p. 507.)  The *Jefferson* court determined this evidence should have been excluded under Evidence Code section 352 because it had little evidentiary value and created an emotional bias against the defendant.  (*Ibid.*)

In contrast to *Jefferson*, Lopez's 2015 conviction had considerable evidentiary value, and was not more prejudicial than probative.  The events leading to Lopez's 2015 conviction occurred only about six months before his arrest in this matter.  Lopez's recent conviction for transporting heroin for sale raised a logical inference that he possessed the present heroin for sale.  Because Lopez's knowledge and intent to sell were at issue,

5.

evidence of his very recent narcotic offense involving sales was clearly admissible to show his guilty knowledge, motive and intent to sell heroin. (*People v. Pijal* (1973) 33 Cal.App.3d 682, 691; see also *People v. Williams* (2009) 170 Cal.App.4th 587, 607 ["In prosecutions for drug offenses, evidence of prior drug use and prior drug convictions is generally admissible under Evidence Code section 1101, subdivision (b), to establish that the drugs were possessed for sale rather than for personal use and to prove knowledge of the narcotic nature of the drugs."].)

We reject Lopez's arguments that the difference in the quantity of drugs or where they were recovered made the 2015 conviction so dissimilar as to make it irrelevant. Instead, the 2015 conviction clearly demonstrated Lopez's motive, intent and knowledge regarding the sale of heroin. (Evid. Code, § 1101, subd. (b).) The prosecution's drug expert established that both incidents involved a substantial amount of heroin relative to personal use, and both incidents were indicative of possession for sale. In the present matter, Lopez held heroin in multiple individual bindles and he possessed cash in small denominations, all of which strongly suggested possession for sales. Evidence of Lopez's 2015 conviction was highly probative in the present matter.

We also disagree that the introduction of the 2015 conviction was more prejudicial than probative. A trial court may exclude otherwise admissible evidence if its probative value is substantially outweighed by its prejudicial effect; that is, if its admission would result in the undue consumption of time, a danger of undue prejudice, confusion about the issues or the danger of misleading the jury. (Evid. Code, § 352.) However, the prejudice Evidence Code section 352 seeks to avoid is not that naturally flowing from relevant, highly probative evidence. Instead, the statute attempts to avoid the prejudging of a case based on extraneous factors. (*People v. Zapien* (1993) 4 Cal.4th 929, 958 (*Zapien*).) Prejudice is not associated with evidence probative of a defendant's guilt; instead, it involves evidence tending to evoke an emotional bias against the defendant with very little effect on the issues. (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1035.) Evidence is

substantially more prejudicial than probative if it poses an intolerable risk to the fairness of the proceedings or the reliability of the outcome. (*Waidla, supra,* 22 Cal.4th at p. 724.)

Unlike in *Jefferson*, we cannot find that the 2015 conviction may have evoked a particular emotional bias against Lopez or that it was more inflammatory than the present charge. Indeed, the jury learned Lopez was on the street with cash and 24 bindles of heroin. The evidence overwhelmingly suggested he was selling heroin when he was arrested for the present charge. Lopez's prior conduct did not represent extraneous factors that might have caused the jury to prejudge the case improperly. (See *Zapien, supra,* 4 Cal.4th at p. 958.) *Jefferson* is distinguishable, and it does not dictate reversal of Lopez's conviction.

Finally, the jury learned Lopez had been convicted for the 2015 incident. This reduces any concern that the jury might have felt compelled to otherwise punish Lopez for his past behavior. In any event, the court admonished the jury that the 2015 conviction was admitted for a limited purpose. The jurors were told they could not consider this evidence to prove Lopez's predisposition to commit the pending charge or that he had a bad character. "We presume the jury followed these instructions." (*People v. Lindberg* (2008) 45 Cal.4th 1, 26.) The court's instructions eliminated any danger of the jury confusing the issues or being misled. (*Ibid.*)

Based on this record, Lopez's 2015 conviction was highly probative regarding his intent, motive and knowledge relative to the charge pending in this matter. (Evid. Code, § 1101, subd. (b).) This evidence was not more prejudicial than probative. (*Id.*, § 352.) It is clear the introduction of this evidence did not pose an intolerable risk to the fairness of the proceedings or the reliability of the outcome. (*Waidla, supra,* 22 Cal.4th at p. 724.) We cannot find that the trial court's ruling was outside the bounds of reason. Consequently, the court did not abuse its discretion when ruling on the admissibility of

this evidence. (See *Leon, supra,* 61 Cal.4th at p. 597.) Accordingly, Lopez's arguments are without merit, and this claim fails.[3]

## II.[*] The Trial Court Did Not Abuse Its Discretion In Permitting Admission Of Drug Evidence Tested At The Crime Laboratory.

Lopez argues the trial court erred by not excluding the drug evidence seized from him in this matter and tested by the crime laboratory. He asserts an unexplained gap exists in the chain of custody, rendering this evidence unreliable and prejudicial. He seeks reversal of his conviction.

### A. Background.

Because it is critical to the resolution of this issue, we provide extensive details regarding the chain of custody surrounding the suspected heroin seized from Lopez on January 6, 2016.

#### 1. Dorkin's trial testimony regarding the bindles of heroin.

During trial, Dorkin testified he arrested Lopez on January 6, 2016. When he searched Lopez, Dorkin found a bag that contained suspected heroin. The bag was in Lopez's left front pants' pocket. The suspected heroin was located in 24 bindles, all contained in a clear sandwich bag. The sandwich bag was located in a white bag that had "Cruz Thru" written on it. Dorkin took a picture of the items recovered from Lopez (exhibit 1), which included the white bag containing the heroin. Another picture was taken of the white bag (exhibit 2). Both of these exhibits were moved into evidence.

Dorkin testified he secured the suspected drugs in a work vehicle until the investigation was concluded. He then secured this evidence in locked storage at his

---

[3] Because the trial court did not abuse its discretion, we will not address Lopez's additional assertions that the admission of this evidence was prejudicial. Likewise, because this claim fails on its merits, we need not address waiver and/or ineffective assistance of counsel.

[*] See footnote, *ante*, page 1.

office before it was booked into the Kern County Sheriff Department's property room. Dorkin kept possession of the suspected heroin until it was placed in the secured locker, and only he possessed the key to that particular locker. He then transported it to the property room. Dorkin explained that, associated with Lopez's arrest, a large amount of methamphetamine was also seized from another suspect.

When placing Lopez's drugs into the property room, Dorkin sealed them in a narcotics envelope. He placed a sticker on that envelope. The sticker contained a computer printout of the case number assigned to this investigation (SR16-00495) and an item number (MD2), which represented the suspected heroin seized from Lopez's pocket. Two pictures (exhibits 3 and 4) were moved into evidence. These exhibits depicted the respective front and back of the envelope that contained the suspected heroin. Also moved into evidence was a photo (exhibit 5) of the suspected heroin labeled as item MD2 and placed in the envelope. MD2 contained the 24 bindles. Dorkin explained to the jury that he put Lopez's suspected heroin into the evidence envelope on January 8, 2016. He personally sealed this envelope with red tape. He testified that, had the envelope been tampered with, it would be "very obvious" and noticeable.

When examining exhibit 3 at trial, Dorkin explained that the date on the envelope's sticker had been modified. Lopez was arrested on January 6, 2016, but the original typewritten date was incorrect. Someone had written the correct date on the sticker.[4] The sticker also listed "Brandy Rogers" as the suspect. Dorkin explained that Brandy Rogers was a suspect who had been arrested with Lopez around the same time. Dorkin, however, confirmed that MD2 represented the 24 bindles of suspected heroin he had personally recovered from Lopez, and which he had placed in this sealed envelope. Dorkin also explained to the jury that the evidence sticker showed a violation of Health

---

[4] The record is unclear regarding the original date. Based on testimony provided at trial, the original date was either "11/6/2016" or "1/6/2015." Someone crossed out that original date and handwrote 1/6/16 on the sticker.

and Safety Code section 11378.  He stated this charge was applicable to the seized methamphetamine from the other suspect, and it did not pertain to Lopez.

Dorkin did not personally transport this evidence to the crime laboratory.  He was not sure how it was transported to the lab for analysis.  During cross-examination, Dorkin confirmed he personally prepared the exhibit envelope that had contained Lopez's suspected heroin.  He explained that someone else had entered the initial information about this investigation into the computer system, including typing in the other suspect's name (Brandy Rogers).  Dorkin admitted that, because it was "probably just overlooked[,]" he had not checked the "chain of custody" box appearing on the evidence sticker.  Dorkin had not crossed-out the date on the envelope sticker and written in the new date.

Dorkin explained that someone else started the "evidence process" by entering names into the computer.  Dorkin did not believe it was critical to place every suspects' name on an evidence envelope.  According to Dorkin, the evidence would be deciphered by the item number in the police report.  He admitted it was possible the wrong suspect's name was printed for this envelope sticker.

### 2. The criminalist's testimony regarding testing.

On or about January 25, 2016, a criminalist with a local crime laboratory received the evidence envelope (depicted in the photo in exhibit 3) containing Lopez's suspected heroin.  The criminalist did not change the date on the envelope's sticker.  She did not recognize that handwriting.  When she received it, the envelope was still sealed with the same red tape that Dorkin had affixed on it.  The criminalist cut open the evidence envelope.  Inside the envelope, the 24 bindles of drugs were also sealed inside their bag.  She removed the bag containing the drugs, cut open the bag, and removed the bindles.  In court, she identified a photograph (exhibit 5) which showed the same bag containing the

individual packets of a suspected controlled substance that Dorkin had handled and sealed. The criminalist tested five of the bindles, which came back positive for heroin.

## B. The standard of review.

When a trial court admits evidence in a chain of custody claim, we review that decision for an abuse of discretion. (*People v. Catlin* (2001) 26 Cal.4th 81, 134 (*Catlin*).) As noted before, an abuse of discretion is present when the court's ruling is outside the bounds of reason. (*Waidla, supra,* 22 Cal.4th at p. 714.)

## C. Analysis.

Lopez contends the prosecution failed to prove the suspected heroin seized from him was the same evidence tested by the crime lab. He questions why Dorkin put the wrong suspect's name and date on the evidence sticker, and who changed the date on the sticker. He notes that Health and Safety Code section 11378 was referenced on the sticker, which applied to the methamphetamine seized during this investigation. He argues that either the evidence inside the envelope was not the same or it may have been altered. He relies primarily on this court's opinion in *People v. Jimenez* (2008) 165 Cal.App.4th 75 (*Jimenez*). He asserts the trial court should have excluded the evidence in its entirety. We disagree.

In a chain of custody claim, the party offering the evidence bears the burden to show that, " ' "taking all the circumstances into account including the ease or difficulty with which the particular evidence could have been altered, it is reasonably certain that there was no alteration." ' " (*Catlin, supra,* 26 Cal.4th at p. 134.) However, the reasonable certainty requirement is not met if some " ' "vital link in the chain of possession" ' " is lacking. (*Ibid.*) In that case, " ' "it is as likely as not that the evidence analyzed was not the evidence originally received." ' " (*Ibid.*) On the contrary, if tampering is only speculated, then it is proper to admit the evidence and allow what doubt exists to go to the evidence's weight. (*Ibid.*) Indeed, while a perfect chain of custody is

desirable, gaps will not result in the exclusion of evidence so long as the links offered connect the evidence with the case and no serious questions of tampering are raised. (*Ibid*, citing Mendez, Cal. Evidence (1993) § 13.05, p. 237.)

In *Jimenez, supra,* 165 Cal.App.4th 75, this court reversed the defendant's judgment because of concerns about the chain of custody involving DNA samples. (*Id.* at p. 77.) No direct evidence established how DNA swabs had been taken from the defendant. Nothing showed how those samples were stored, sealed, and sent to the crime lab for testing. Instead, only cursory testimony was offered because the technician, who presumably could have provided details to these issues, had been released from her subpoena in order to travel overseas. (*Id.* at pp. 79-80.) The record contained "key foundational issues about the chain of custody." (*Id.* at p. 80.) It was unclear who labeled the swabs at the police station and who (if anyone) sealed them. It was unclear who segregated the swabs from other evidence. It was unclear who put the swabs in safe storage. It was unclear whether the swabs were still sealed on arrival at the crime laboratory and, if so, who broke that seal at the lab prior to testing. (*Ibid.*) The *Jimenez* court concluded the trial court had abused its discretion in permitting admission of this evidence. (*Id.* at p. 81.) Based on the record, the abuse was deemed prejudicial, requiring reversal. (*Id.* at pp. 81-83.)

In contrast to *Jimenez*, serious gaps in the chain of custody do not exist in this matter. Dorkin testified he was the one who seized the 24 bindles from Lopez. Based on his experience and training, Dorkin believed the bindles contained heroin. Dorkin explained how he maintained possession of the bindles, how he stored them, and how he sealed them in the evidence envelope. The criminalist received the sealed envelope. After the criminalist opened the envelope, she found the 24 bindles still sealed inside their bag. She removed the drugs and tested some of the bindles.

Although clerical errors occurred on the envelope's sticker, the prosecution established a sufficient chain of custody. Nothing reasonably suggests that anything

12.

other than Lopez's heroin was placed in this envelope. Nothing reasonable suggests that this evidence was altered. *Jimenez* is distinguishable, and it does not support finding an abuse of discretion in this matter.

Based on this record, the prosecution met its burden of proving the heroin the criminalist tested originated from Lopez. No serious questions of tampering existed. Taking all of the circumstances into account, it is reasonably certain a proper chain of custody occurred. As such, it was proper to admit this drug evidence and allow the jury to weigh any doubts. (See *Catlin, supra,* 26 Cal.4th at p. 134.) The court's evidentiary ruling was not outside the bounds of reason. (See *Waidla, supra,* 22 Cal.4th at p. 714.) Accordingly, the court did not abuse its discretion, and this claim fails.[5]

## III. Lopez's Four Prior Prison Enhancements Must Be Stricken.

A defendant may receive an additional sentence enhancement under section 667.5 if certain conditions are met. (*People v. Buycks* (2018) 5 Cal.5th 857, 889 (*Buycks*).) Under current law, a one-year enhancement is imposed for each prior separate prison term or county jail term imposed under section 1170, subdivision (h).[6] (§ 667.5, subd. (b).)

On October 8, 2019, the Governor signed Senate Bill 136 into law. This amends section 667.5, subdivision (b). Under this amendment, a one-year prior prison term enhancement will only apply if a defendant served a prior prison term for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b). (See Stats. 2019, ch. 590, § 1.)

---

[5] Because the trial court did not abuse its discretion, we do not address Lopez's arguments regarding prejudice. We also need not address the alternative arguments of waiver or ineffective assistance of counsel because this claim fails on its merits.

[6] A one-year prior prison term enhancement contains a washout exception; the enhancement will not apply if a defendant remains free of prison custody for five years and does not commit an offense which results in a felony conviction. (§ 667.5, subd. (b).)

Prior to the Governor signing Senate Bill 136, the parties had briefed whether or not Lopez's four prior prison term enhancements should be stricken. That briefing did not include Senate Bill 136. Oral arguments occurred in this matter the day after the Governor signed this bill. For reasons not related to Senate Bill 136, respondent conceded at oral argument that three of Lopez's four prior prison term enhancements should be stricken.

On October 11, 2019, we directed the parties to submit supplemental briefing regarding Senate Bill 136 and its impact in this matter. Via supplemental briefing, the parties agree, as do we, that all four of Lopez's prior prison term enhancements must be stricken because of Senate Bill 136.[7] It is undisputed that none of his four prior prison terms were for sexually violent offenses under Welfare and Institutions Code section 6600, subdivision (b).

Senate Bill 136 will become effective on January 1, 2020. Except when passed as an urgency measure, a statute enacted at a regular session of the Legislature generally becomes effective on January 1 of the year following its enactment. (Cal. Const., art. IV, § 8, subd. (c); Gov. Code, § 9600, subd. (a).) Respondent concedes that, when Senate Bill 136 goes into effect, Lopez's judgment will likely not be final. Respondent further concedes that this change in law will apply to Lopez retroactively. (See *In re Estrada* (1965) 63 Cal.2d 740, 742 (*Estrada*).) We agree.

We are to assume, absent evidence to the contrary, that the Legislature intended an "amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." (*People v. Brown* (2012) 54 Cal.4th 314, 323, citing *In re Estrada, supra,* 63 Cal.2d at pp. 742-748, fn. omitted.) A final judgment will not occur in this matter until 30 days after this opinion is issued. (Cal. Rules of Court,

---

[7] In light of this change in law, we will not address the arguments which the parties had raised in the initial briefing.

rule 8.366(b)(1).) If one or more parties file a petition for rehearing, the date of finality will be extended further. (Cal. Rules of Court, rule 8.268(b)(1)(A).) The parties will have 10 days after this decision becomes final to petition for review in the California Supreme Court. (Cal. Rules of Court, rule 8.500(e)(1).) Only after a petition for review has been adjudicated in the state court of last resort can a party then petition for a writ of certiorari in the United States Supreme Court. (U.S. Supreme Ct. Rules, rule 13(1) & (3).) For the purpose of determining the retroactive application of an amendment to a criminal statute, the finality of a judgment is extended until the time has passed for petitioning for a writ of certiorari in the United States Supreme Court. (*People v. Vieira* (2005) 35 Cal.4th 264, 305-306.)

It is clear that Lopez will not exhaust his appeal rights before January 1, 2020. As such, he benefits from Senate Bill 136. However, we need not remand this matter for resentencing. The trial court imposed the maximum possible sentence against Lopez with an upper term of eight years in count 1 for possession of a controlled substance (heroin) for sale (Health & Saf. Code, § 11351). In a companion case, the court imposed a one-third consecutive term of 32 months for Lopez's 2015 conviction for transporting narcotics (heroin) for sale (Health & Saf. Code, § 11352, subd. (a)). With various enhancements, Lopez received an aggregate prison term of 17 years eight months.

Because the trial court imposed the maximum possible sentence, there is no need for the court to again exercise its sentencing discretion. (*Buycks, supra,* 5 Cal.5th at p. 896, fn. 15.) Accordingly, we will strike the four section 667.5, subdivision (b), enhancements imposed in this matter. We will direct the trial court to cause to be prepared an amended abstract of judgment reflecting these modifications, and to reduce Lopez's total prison sentence accordingly.[8]

---

[8] The amendments to section 667.5, subdivision (b), will not take effect until January 1, 2020. However, these amendments will be effective at the time this court issues the remittitur returning jurisdiction to the superior court.

**IV.**<sup>\*</sup>   **The Three-Year Enhancement Imposed Under Health And Safety Code Section 11370.2 Must Be Stricken.**

The parties agree, as do we, that the three-year enhancement imposed against Lopez pursuant to Health and Safety Code section 11370.2 must be stricken. At the time of Lopez's current crime in 2016, Health and Safety Code section 11370.2, subdivision (a), required a separate and consecutive three-year term if a defendant was convicted of violating Health and Safety Code section 11351 (possession or purchase of certain controlled narcotics for sale) and the defendant had suffered a previous conviction for various drug offenses, including a violation of Health and Safety Code section 11352, subdivision (a) (transportation of narcotics for sale). (Former § 11370.2, subd. (a); see *People v. Wright* (2019) 31 Cal.App.5th 749, 752 (*Wright*).) However, in October 2017, the Governor signed Senate Bill No. 180 (2017–2018 Reg. Sess.). This legislation amended Health and Safety Code section 11370.2, effective January 1, 2018, limiting this enhancement only to a prior conviction for a violation of Health and Safety Code section 11380.[9] (*Wright, supra,* 31 Cal.App.5th at p. 752.)

We agree with the parties that this amended law retroactively applies to Lopez because his case is not yet final. (*People v. McKenzie* (2018) 25 Cal.App.5th 1207, 1213 (*McKenzie*).) Because of the amended law, Health and Safety Code section 11370.2 is no longer applicable in this case. Accordingly, Lopez benefits from Senate Bill No. 180, and the enhancement under Health and Safety Code section 11370.2 must be stricken. (*McKenzie, supra,* 25 Cal.App.5th at p. 1218.) Similar to the enhancements under section 667.5, we will direct the trial court to reflect this modification in the amended abstract of judgment, and to further reduce Lopez's total prison sentence.

---

<sup>\*</sup> See footnote, *ante*, page 1.

[9] Health and Safety Code section 11380, subdivision (a), makes it a felony for a person 18 years of age or over to use a minor as an agent or to encourage a minor to violate certain laws involving controlled substances.

## **DISPOSITION**

Lopez's judgment is modified as follows. The four one-year enhancements imposed pursuant to Penal Code section 667.5, subdivision (b), are stricken. The three-year prior felony drug conviction enhancement pursuant to Health and Safety Code section 11370.2 is also stricken. With these modifications, Lopez's judgment is affirmed.

The trial court is directed to cause to be prepared an amended abstract of judgment reflecting said modifications and Lopez's resulting total prison sentence of ten years eight months. The court shall forward a certified copy of the same to the appropriate authorities.

_____
SNAUFFER, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
FRANSON, J.

17.